42789. YOST v. TOROK et al.
(344 SE2d 414)

WELTNER, Justice.

1. The Toroks, who are husband and wife, sued Yost for personal injuries which they alleged arose out of an automobile collision. Yost filed an answer in which he contended that the collision never had taken place. He also filed a counterclaim for malicious abuse of civil process, which he later dismissed. The Toroks then brought an independent action against Yost for libel, slander, and malicious abuse of process, alleging that Yost had filed the counterclaim in order to induce them to abandon their action against him. Their action was dismissed by the trial court, and the Toroks appealed.

The Court of Appeals reversed as to the malicious abuse of process claim, holding that the Toroks had stated a claim upon which relief might be granted, in that they alleged that Yost had filed his counterclaim for a wrongful purpose, thereby using civil process improperly. *Torok v. Yost*, 176 Ga. App. 149 (335 SE2d 419) (1985). Certiorari was granted to determine whether the Toroks' complaint stated a claim for malicious abuse of process.

2. There is a continuing concern over the abuse of the judicial process, and a justifiable interest in its prevention. There is proper apprehension over improper defensive tactics (protracted pleadings, prolonged discovery, massive depositions, and the like), which are designed *not* to discover the truth, but rather to exhaust the claim-

ant. There is the need to contain the corrupting effect of groundless claims, and of those which, while having *some* merit, are brought with the principal intent or effect of harassment, coercion, or embar- rassment.

3. We have recognized two separate torts which address these concerns, which we have denominated malicious *abuse* of process, and malicious *use* of process.[1] See *Porter v. Johnson*, 96 Ga. 145 (23 SE 123) (1895). We currently differentiate between them as follows:

(a) " '[M]alicious abuse lies for "wrongfully and unlawfully using legally and properly issued process for a purpose the law never intended it to effect, while the latter action [malicious use] lies for maliciously suing out civil process without probable cause." ' " *Ferguson v. Atlantic Land &c. Corp.*, 248 Ga. 69, 71 (281 SE2d 545) (1981). To state a claim for malicious *abuse*, we have required the claimant to show the existence of an ulterior motive, and an "act in the use of the process not proper in the regular prosecution of the proceeding." Id.

(b) The necessary elements of malicious *use* are malice, lack of probable cause, and termination of the proceeding in favor of the party who seeks to charge another with malicious use. In some cases, proof of actual damages has been required. See *Taylor v. Greiner*, 247 Ga. 526 (277 SE2d 13) (1981).

(c) The tort of malicious abuse arose as a modification of the tort of malicious use, to provide relief where the procedural requirements of malicious use could not be met. *Grainger v. Hill*, 4 Bing. N.C. 212, 132 Eng. Rep. 769 (1838), cited in W. L. Prosser and W. P. Keeton, *Handbook of the Law of Torts*, at 897 (5th ed., 1984). The substantive difference between the two torts is often difficult to discern. Yet we have persisted in maintaining variant requirements for each.

4. The pursuit of claims sounding in either tort meets with barriers. The requirement that malicious *use* claims be brought in a subsequent action results in substantial delay and additional expense to all parties, as the factual matters must be litigated, all over again, before another tribunal. This is a burden for bona fide litigants — wronged plaintiffs and wronged defendants — because they must bear the costs and delays of additional litigation. And the threat of that subsequent litigation can serve to restrain bona fide claimants from presenting genuine claims in the first instance.

5. In this case, the Toroks' claim cannot proceed as malicious *use* because Yost's counterclaim, which was dismissed voluntarily, has not terminated in their favor. See *Fla. Rock Indus., Inc. v. Smith*, 163 Ga. App. 361, 362 (2) (294 SE2d 553) (1982). Thus, to state a claim they

---

[1] The tort for malicious prosecution, codified at OCGA § 51-7-40, addresses criminal proceedings. Although its elements are similar to those of the tort of malicious use, it is not here considered.

must call their complaint malicious *abuse*. But this, too, is less than clear. The Court of Appeals found in this case that "[p]laintiffs [the Toroks] are not alleging that the *filing* of [Yost's] claim was the tort; that would relate to malicious *use* of process. . . . Instead, they have alleged that after it was filed, the counterclaim was *used* improperly; and thus not only were the legitimate *purposes* of counterclaims not served, but an unpermitted purpose was advanced." *Torok*, supra, 176 Ga. App. at 151. (Emphasis supplied.) However, we have stated that "[r]egular and legitimate *use* of process, though with a bad *intention*, is not a malicious *abuse* of process." *Ferguson*, supra, 248 Ga. at 71. (Emphasis supplied.)

6. The nomenclature which we have used for these two claims, along with the definition of their constituent elements, have combined to create substantial uncertainty, to the extent that a plaintiff with a bona fide claim might have no effective means of relief against a defendant who employs improper defensive tactics. An element of malicious *abuse* (none of which is stated with full clarity) might fail of proof; a genuine claim for malicious *use* might be lost by reason of conduct of an opposite party which itself constitutes that tort. In either event, there is injury without remedy.

7. We have suffered these impediments to remain in our law out of an old concern that there would arise in every case an antiphonal chorus of claims and counterclaims, which would waste judicial resources and discourage the pursuit of bona fide claims. "If the law were otherwise, the ending of an action would be merely the beginning of litigation. The defendant, immediately upon the failure of the action, would begin one against the plaintiff; and if the latter action should fail, the defendant therein would in turn bring another action; and so on *ad infinitum*." *Porter*, supra, 96 Ga. at 148. This is, of course, a valid concern.

8. The effort to prevent reciprocal and endless controversy has diminished the remedies for abusive litigation. Historically, the action for malicious use and its variant, malicious abuse, grew out of the English common-law system, which contained certain internal controls. In present day English practice, costs, including attorney fees, are assessed against losing parties (hence serving as a deterrent to baseless actions), and the torts of malicious use and malicious abuse provide remedies only for extraordinary circumstances, including actions (or positions) which are maintained principally for the purpose of coercion or harassment.[2] In our system, however, those internal sanctions

---

[2] See Note, *Groundless Litigation and the Malicious Prosecution Debate*, 1979, 88 Yale Law Journal 1218, 1229: "[T]he tort of malicious [civil] prosecution in England is part of a comprehensive system for dealing with wrongful litigation, a system that has not changed its essential outline in over a millennium. The central feature has always been some form of

heretofore have been lacking, and the two torts have operated in something of a vacuum, performing in part functions for which they were not designed.

9. Recently enacted House Bill No. 1146, Ga. L. 1986, p. 1591 (to be known as OCGA § 9-15-14), provides for the award of attorney fees and expenses of litigation for specified abusive conduct. The new statute will, of course, govern these two elements of damages.

10. That, however, in no way resolves the problems which we have outlined relative to other elements of recovery, specifically: special damages *other than* attorney fees and expenses of litigation; damages for mental distress, where there is either wilfulness, or wanton and reckless disregard of consequences which is the equivalent of wilfulness (see *Hamilton v. Powell, Goldstein, Frazer & Murphy*, 252 Ga. 149 (311 SE2d 818) (1984)); or nominal damages pursuant to OCGA § 51-12-4.[3]

11. The tort system can (and should) provide within its own structure the means for preventing its abuse. To accomplish this, we now delineate a remedy which will (a) merge, by redefinition, the common-law claims of malicious abuse and malicious use; (b) assure against chain-reaction litigation by requiring that any such claim be presented as a part of the underlying action; and (c) specify a procedural mode for the disposition of the claim.[4]

12. To define anew — into a single cause of action — the existing torts relative to abusive litigation, we adopt the legislative language of new OCGA § 9-15-14. See *Village Centers, Inc. v DeKalb County*, 248 Ga. 177, 179 (3) (281 SE2d 522) (1981) (judicial rule modeled upon statutory provision); *Fuller v. State*, 232 Ga. 581 (208 SE2d 85) (1974) (adoption by Supreme Court of practice rule sought to be prescribed by General Assembly).

13. We now re-define the elements of the common-law claim, as follows:·

---

internal sanction . . . . Subsequent actions . . . were never designed to carry the primary burden of deterring false suits; that function had always been reserved for internal sanctions. Subsequent suits were developed for and limited to the extraordinary case for which the internal sanctions provided neither deterrent nor remedy."

[3] Punitive damages, however, are excluded, as the tort itself is designed as a deterrent. See OCGA § 51-12-5; *Westview Cemetery, Inc. v. Blanchard*, 234 Ga. 540, 544 (216 SE2d 776) (1975).

[4] See Partridge, Wilkinson, and Krouse, *A Complaint Based on Rumors: Countering Frivolous Litigation*, 1985, 31 Loyola Law Review 221, 254-263 in which the authors propose a broader cause of action, "unfounded litigation," "designed to punish and deter those who would pursue groundless claims." This cause of action would require the commencement or continuation of an action based on an "insufficiency of reasonably reliable evidence or reasonably supportable legal theory." Damages would include attorney fees, costs, and actual damages caused by the pursuit of such an action. Proof of malice or other aggravating circumstances would allow recovery of punitive damages. See also Note, *Liability for Proceeding with Unfounded Litigation*, 1980, 33 Vanderbilt Law Review 743.

Any party who shall assert a claim, defense, or other position with respect to which there exists such a complete absence of any justiciable issue of law or fact that it reasonably could not be believed that a court would accept the asserted claim, defense, or other position; or any party who shall bring or defend an action, or any part thereof, that lacks substantial justification, or is interposed for delay or harassment; or any party who unnecessarily expands the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures, shall be liable in tort to an opposing party who suffers damage thereby.

The term "lacks substantial justification" shall mean substantially frivolous, substantially groundless, or substantially vexatious.

14. The re-defined claim relative to abusive litigation arises, by necessity, only after the commencement of civil proceedings. It is derivative in nature, and hence it must be pleaded as a compulsory counterclaim or compulsory additional claim pursuant to OCGA § 9-11-13 (a). See also *Stapleton v. Palmore*, 250 Ga. 259 (297 SE2d 270) (1982). By requiring that the claim be brought as part of the underlying proceedings, we eliminate the prospect of never-ending litigation. All such issues will be resolved in one trial, except as provided otherwise by the new statute, OCGA § 9-15-14.

15. The adjudication of this claim (or of such claims), however, will be deferred, by bifurcation, until after the disposition of the underlying action, whereupon it shall be heard immediately by the *same* fact finder — that is, by the judge or jury of the underlying action. No reference to the existence of any such claim will be made before the jury during the trial of the underlying claim.

16. Finally, in the second phase (the consideration of any claim relative to abusive litigation), all the facts and circumstances relating to the "claim, defense, or other position" (see Division 13) which shall be relevant and material to the elements of the re-defined tort may be submitted to the trier of fact, e.g., any offers of settlement or compromise, offers to stipulate as to factual matters, and the like.

17. As to the case before us, the separate actions of the Toroks must be consolidated. At the conclusion of the original personal injury claim, the same jury (or judge) will then consider their additional claim against Yost. The provisions of OCGA § 9-15-14 will not be available to the Toroks, however, as by its terms the new statute applies to claims, defenses or other positions first raised on or after July 1, 1986. That being the case, the recoverability of attorney fees and expenses of litigation must be determined by existing principles of law.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 25, 1986.

Gambrell, Clarke, Anderson & Stolz, Irwin W. Stolz, Jr., Seaton D. Purdom, for appellant.

Scheer & Elsner, Robert A. Elsner, John A. Bender, Jr., for appellees.