## A97A1652. SNELLINGS v. SHEPPARD.
## A97A1653. CANDLER v. SHEPPARD.
### (494 SE2d 583)

BEASLEY, Judge.

In an earlier suit, various members of the Candler family, by their attorney Snellings, sued Sheppard and her husband. After the trial court's grant of Sheppard's motion for summary judgment was affirmed in *East Piedmont 120 Assoc. v. Sheppard*, 209 Ga. App. 664 (434 SE2d 101) (1993), she brought this action against the Candlers and their attorney Snellings for abusive litigation. OCGA § 51-7-80 et seq. She wants to discover defendants' income tax returns and other documents for the purpose of obtaining information concerning their financial circumstances. The trial court granted Sheppard's motion to compel discovery and $500 attorney fees for obtaining the order. We granted the Candlers' and Snellings' applications for interlocutory appeal.

Sheppard and her husband own various tracts of land. According to Sheppard's husband, they decided to title approximately one-half of their holdings in her name, so he conveyed to her an undeveloped commercial tract of approximately 13 acres, located at the corner of East Piedmont Extension and Roswell Road in Atlanta (the East Piedmont property).

The Candlers' business, through Candler Development Company (CDC), is to locate sites for Publix stores and then develop Publix-anchored shopping centers at approved locations. When Publix decided to begin operations in Georgia, the East Piedmont property was advertised for sale. The Candlers offered to purchase 9.3 acres from Sheppard's husband, who they assumed was the owner. This acreage was valued at about $1.6 million. Sheppard's husband responded by offering to participate in the development of the shopping center through a joint venture with CDC.

The Candlers drafted a letter of intent for a joint venture between Sheppard's husband and CDC. This letter, signed by Sheppard's husband, stated he would contribute "his land" to the joint venture and CDC would develop the property and secure Publix as the anchor tenant. On the strength of the letter, the Candlers

incurred various developmental expenses.

After Publix gave conditional approval to the East Piedmont location, the Candlers prepared a joint venture agreement between themselves and Sheppard's husband. The agreement contemplated formation of a limited partnership (East Piedmont 120 Associates) to develop the property. By this time, the Candlers had become aware that Sheppard's husband did not own the property, as the agreement identified Sheppard as the owner and stated that her husband was negotiating with her to reacquire it. Under the agreement, the property would be transferred to the limited partnership after Sheppard conveyed it to her husband, and he was to be compensated by receiving certain preferences on partnership distributions after the Candlers were reimbursed for their various services by about $1 million in fees.

Sheppard's husband showed this agreement to her, and they concluded that this proposal was wholly unacceptable. Sheppard's husband refused to enter into the proposed joint venture agreement but offered to sell the property to the Candlers if they could secure financing. The Candlers submitted offers to purchase 8.3 and then 9.3 acres. These offers were rejected for a number of reasons (little or no earnest money was to be paid, closing was delayed, the Candlers' solvency was questioned, solvent prospective purchasers could close forthwith for $1.6 million, and the Sheppards were in financial distress because of cash demands for payment of bank loans). After rejecting the Candlers' offers, Sheppard in consultation with her husband accepted an offer to sell the property to a third party.

In 1992, the Candlers, East Piedmont 120 Associates, and CDC filed a "complaint in law and equity" against the Sheppards. They charged breach of contract and fraud, based on allegations that Sheppard's husband, while acting as her agent with her express permission, entered into an oral joint venture agreement with the Candlers and CDC for the development of the property. The Candler group filed a notice of lis pendens on the entire tract. In addition to damages, the complaint sought a decree of specific performance mandating that the Sheppards make the property available to the joint venture or sell the property directly to the plaintiffs.

The trial court denied Sheppard's husband's motion for summary judgment on all issues except that concerning breach of contract. The property was declared free and clear of any lis pendens, and the sale of the property to another was completed.

Sheppard instituted this action in 1994, claiming abusive litigation. In April 1996, she served the Candler defendants and Snellings with a notice to produce and request for production of the following documents: (1) copies of their federal income tax returns from 1992 through 1995; (2) copies of any loan applications made by them from

1992 to present; (3) copies of any of their financial statements, asset summaries or net worth statements from 1992 to present; and (4) a list of all real property in which they have an ownership interest.

Defendants responded, objecting to these discovery requests on grounds they were overly broad, burdensome, harassing, not reasonably calculated to lead to the discovery of admissible evidence, and not relevant to the subject matter of the action. Snellings' supplemental response stated he was not in possession of any of the requested documents except his own tax returns.

Sheppard moved to compel discovery, arguing that the information sought is relevant to her claim against the Candler defendants for abusive litigation and is also relevant to her claim against all defendants for punitive damages. The trial court granted Sheppard's motion based on her arguments.

In Case No. A97A1653, the Candler defendants contend: (a) their financial circumstances are not relevant to Sheppard's claim against them for abusive litigation and (b) their tax returns and other sensitive financial documents should be subject to disclosure only if and when Sheppard obtains an award of punitive damages.

In Case No. A97A1652, Snellings submits that the order is in error because: (a) his tax returns are neither relevant nor reasonably calculated to lead to discovery of admissible evidence, and production of such information is more prejudicial to him than beneficial to Sheppard; (b) Sheppard did not make the required showing of an entitlement to punitive damages; and (c) there was no basis for the court's award of attorney fees to Sheppard.

Appellants all challenge Sheppard's entitlement to the subject documents for all years requested.

In general, parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action or appears reasonably calculated to lead to the discovery of admissible evidence. OCGA § 9-11-26 (b) (1); *E. H. Siler Realty &c. v. Sanderlin*, 158 Ga. App. 796, 797 (1) (282 SE2d 381) (1981).

1. The first question is whether the Candler defendants' financial condition is relevant to Sheppard's abusive litigation claim against them.

"Any person who takes an active part in the initiation, continuation, or procurement of civil proceedings against another shall be liable for abusive litigation if such person acts: (1) With malice; and (2) Without substantial justification." OCGA § 51-7-81. " 'Malice' means acting with ill will or for a wrongful purpose and may be inferred in an action if the party initiated, continued, or procured civil proceedings or process in a harassing manner or used process for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based." OCGA § 51-7-80 (5); see OCGA

§ 51-7-80 (8) (B) (" 'Wrongful purpose' . . . results in or has the effect of: Attempting to unjustifiably accomplish some ulterior or collateral purpose other than resolving the subject controversy on its merits."). " 'Without substantial justification,' when used with reference to any civil proceeding, claim, defense, motion, appeal, or other position, means that such civil proceeding, claim, defense, motion, appeal, or other position is: (A) Frivolous; (B) Groundless in fact or in law; or (C) Vexatious." OCGA § 51-7-80 (7).

Sheppard argues that evidence that the Candler defendants were financially unable to purchase her property would show they could not have tendered the purchase money required in order to obtain a decree of specific performance (see *Covington v. Countryside Investment Co.*, 263 Ga. 125, 126 (1) (428 SE2d 562) (1993)), thereby authorizing a jury to find that they named her as a defendant in the suit not to obtain an adjudication of their claims, but (a) to prevent her from selling the property to anyone else by filing the notice of lis pendens and (b) to force her to sell the property to them with concessions they could not have otherwise obtained.

The Candler defendants respond that their personal financial circumstances are not relevant to their ability to purchase Sheppard's property, because purchases of land for commercial real estate development are financed not from personal assets but through outside entities such as banks, financial institutions, or co-investors. There is no evidence of such outside source. And Candler Development Company, the company through which the Candlers did business, is a legally nonexistent entity. Consequently, the record shows that, if the Candlers were to obtain financing, it would have had to be on the strength of their personal assets. Evidence of their personal financial circumstances is thus relevant to Sheppard's abusive litigation claim.

2. The next question raised by the parties is whether Sheppard has made the requisite showing of entitlement to punitive damages to support discovery of information concerning their financial circumstances.

We do not reach this question, because punitive damages are excluded from the tort of abusive litigation. First, "[t]he abusive litigation tort set forth in OCGA § 51-7-80 et seq. is in derogation of the common law, . . . must be strictly limited to the meaning of the language used, and not extended beyond the plain and explicit statutory terms. [Cit.]" *Kirsch v. Meredith*, 211 Ga. App. 823, 825 (440 SE2d 702) (1994). It is true that under OCGA § 51-7-83 (a), a prevailing plaintiff "shall be entitled to *all damages allowed by law* as proven by the evidence. . . ." (Emphasis supplied.) But at common law, "[p]unitive damages [were] excluded [from the recoverable damages for the tort of civil abuse of process], as the tort itself [was] designed

as a deterrent. [Cits.]" *Yost v. Torok*, 256 Ga. 92, 95 (10), n. 3 (344 SE2d 414) (1986). We discern no legislative intent to change the law so dramatically as to authorize by silence the imposition of punitive damages when such damages were hitherto forbidden.

Although neither Snellings nor the Candler defendants contest Sheppard's right to seek punitive damages, it is necessary to resolve the issue for two reasons. First, we cannot affirm an order compelling discovery of financial information because of its relevance to a claim for punitive damages, where Georgia law does not allow such damages in the action. Moreover, were we to hold that the issue will not be ruled on because not raised or ruled on below or raised on appeal, in all likelihood appellants would raise it later, at the least when jury instructions are prepared. Therefore, in the interests of judicial economy and the avoidance of protracted litigation, we resolve the issue now.

3. Next is the question of whether the Candler defendants' tax returns are subject to discovery.

Although income tax returns are not privileged, they are not automatically discoverable upon a de minimis showing of relevancy. *Borenstein v. Blumenfeld*, 151 Ga. App. 420 (1), 421 (260 SE2d 377) (1979). " 'Unless clearly required in the interests of justice, litigants ought not to be required to submit (income tax) returns as the price for bringing or defending a lawsuit.' *Wiesenberger v. W. E. Hutton & Co.*, 35 FRD 556, 557 (S.D. N.Y. 1964)." Id. at 421. In balancing one party's right to discovery against another party's right to privacy, *Borenstein* held that "[t]he interests of justice do not require production of tax returns in the face of [an OCGA § 9-11-26 (c)] motion for protective order [or an OCGA § 9-11-34 (b) (2) objection to a request for production of documents] where other discovery methods are available to obtain the same information." Id.

Sheppard has requested that the Candlers produce documents other than their tax returns which should reveal their financial condition. Therefore, under *Borenstein*, Sheppard is not now entitled to discover the Candlers' tax returns.

If it should appear that these other documents do not accurately reflect the defendants' financial condition of the relevant times, then the court could compel production of the tax returns. See *Wiesenberger*, supra at 558. At this point, however, the compelled production of the tax returns exceeded the trial court's discretion. See also *A Southern Outdoor Promotions v. Nat. Banner Co.*, 215 Ga. App. 133, 134-136 (3), (4) (449 SE2d 684) (1994).

4. The fourth issue is whether Sheppard is entitled to discover the documents for all years requested.

The Candler defendants' financial condition is relevant only at one point in time. Insofar as Sheppard's underlying abusive litigation

claim is concerned, the question is whether the Candlers had the ability to purchase her property when they filed suit in 1992. Consequently, Sheppard is entitled to discover only those documents relating to the Candler defendants' financial condition in 1992.

5. In view of our holding that the Candler defendants' financial condition has relevance to Sheppard's abusive litigation claim, their arguments in regard to delaying disclosure of the requested information until after any award of punitive damages is returned are moot.

6. Since substantial parts of the order granting Sheppard's motion to compel discovery must be reversed, defendants' opposition to Sheppard's motion to compel was "substantially justified." OCGA § 9-11-37 (a) (4) (A). An award under § 9-11-37 (a) (4) (A) was not justified.

The order compelling discovery is affirmed in Case No. A97A1653, except as to the Candlers' tax returns and except as to documents not relating to the Candler defendants' financial condition in 1992, with respect to which items the order is reversed.

The order compelling discovery is reversed in Case No. A97A1652.

*Judgment affirmed in part and reversed in part in Case No. A97A1653. Judgment reversed in Case No. A97A1652. McMurray, P. J., concurs. Smith, J., concurs in the judgment only.*

Decided December 5, 1997 —

*Webb, Carlock, Copeland, Semler & Stair, Kent T. Stair, Gregory H. Wheeler*, for appellant (case no. A97A1652).

*McLain & Merritt, M. David Merritt*, for appellant (case no. A97A1653).

*Dupree, Johnson & Poole, Hylton B. Dupree, Jr., Russell D. King*, for appellee.