[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10361
Non-Argument Calendar

_____

D.C. Docket No. 3:15-cr-00005-TCB-RGV-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OCTAVIOUS HASTINGS,
a.k.a. Tay Lay,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 20, 2017)

Before MARTIN, JORDAN and JULIE CARNES, Circuit Judges.

PER CURIAM:

Octavious Hastings appeals his conviction after a jury trial for possession of

a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and

924(a)(2).  Hastings argues that the government committed an "abuse of process"

when it knowingly subpoenaed a witness "of questionable reliability" to testify at trial.  After careful review, we affirm.

## I.

Hastings was convicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Hastings and Rashard Jones sold a gun to Teresa Murphy, who was a confidential informant.  Special Agent Allan McLeod supervised Murphy while she made a controlled purchase of the gun under audio and video surveillance.  Murphy drove Jones and Hastings to Hastings's house where Jones and Hastings went inside and then returned to the car.  Then, they all drove to another spot where Jones handed Murphy the gun in exchange for $250.

At issue on appeal is part of Murphy's trial testimony.  She testified that when Hastings and Jones left Hastings's house she saw Hastings grab Jones and hand him something.  She said she then saw Jones stick something in his pants and pull his shirt over it.  Murphy admitted at trial she had not told law enforcement (or anyone else) she saw Hastings hand something to Jones as they exited Hastings's house until a week before she testified at trial.  She said reviewing the surveillance video helped her recall this handoff.  She also testified no one prompted her to say she saw the handoff between Hastings and Jones.  On cross-examination, Murphy

2

answered that she did not give this testimony to "help [the government] get the ball over the goal line."

Special Agent McLeod testified that when he debriefed Murphy right after the purchase she did not mention seeing Hastings hand anything to Jones as they left Hastings's house. Nor was this handoff included in any police reports about the purchase. McLeod said Murphy mentioned it for the first time during witness preparation one week before trial, and that she volunteered the information without prompting. He also testified that the Bureau of Alcohol, Tobacco, Firearms, and Explosives paid Murphy $200 for the purchase from Jones and Hastings, and a total of $17,000 for her work on various undercover purchases and investigations.

## II.

Hastings argues for the first time on appeal that the government committed an abuse of process. He contends the government reasonably should have known Murphy's testimony would be unreliable but still compelled the testimony under a subpoena ad testificandum. Hastings claims Murphy's new recollection of Hastings handing something to Jones as they were leaving Hastings's house provided the only direct evidence of Hastings possessing a firearm. Thus, Hastings argues, her testimony was crucial to conviction and affected Hastings's substantial right to a fair trial.

We review claims not raised in the district court for plain error.  United

States v. Olano, 507 U.S. 725, 731, 113 S. Ct. 1770, 1776 (1993).  To prevail on

plain-error review an appellant must show:  "(1) an error (2) that is plain and

(3) that has affected the defendant's substantial rights."  United States v. Madden,

733 F.3d 1314, 1320 (11th Cir. 2013).  "[A]nd if the first three prongs are met,

then a court may exercise its discretion to correct the error if (4) the error seriously

affects the fairness, integrity or public reputation of judicial proceedings."  Id.

(alteration adopted and quotation omitted).

Even if we assume error here, Hastings cannot demonstrate that error was

plain.  "For a plain error to have occurred, the error must be one that is obvious and

is clear under current law."  United States v. Dortch, 696 F.3d 1104, 1112 (11th

Cir. 2012) (quotation omitted).

Abuse of process is a common-law tort claim.  See, e.g., Dunwoody

Homeowners Ass'n v. DeKalb Cty., 887 F.2d 1455, 1457 n.1 (11th Cir. 1989) (per

curiam) ("[T]he Georgia Supreme Court merged the common law torts of

malicious abuse of process and malicious use of process into a new tort." (citing

Yost v. Torok, 344 S.E.2d 414, 417 (Ga. 1986))); Dykes v. Hosemann, 776 F.2d

942, 950 (11th Cir. 1985) (Tjoflat, J., concurring in part and dissenting in part)

("Florida law provides that the deliberate use of a legal procedure, whether

criminal or civil, for a purpose for which it was not designed constitutes a tort,

4

abuse of process."); <u>Preskitt v. Lyons</u>, 865 So. 2d 424, 430 (Ala. 2003) ("[I]n order to prove the tort of abuse of process, a plaintiff must prove:  (1) the existence of an ulterior purpose; 2) a wrongful use of process, and 3) malice." (quotation omitted)).  But Hastings is asserting abuse of process in this direct appeal of his criminal conviction, and not in a civil suit.  Hastings has provided no legal basis for concluding that an abuse of process claim is proper in a direct appeal of a criminal conviction, much less that the claim is "clear under current law."[1]  <u>Dortch</u>, 696 F.3d at 1112.  Neither did our own efforts produce support for his claim.

Hastings cites <u>White v. Holderby</u>, 192 F.2d 722 (5th Cir. 1951), which was a civil suit for damages.  He also mentions <u>United States v. Davis</u>, 754 F.3d 1205 (11th Cir.), which we vacated, 573 F. App'x 925 (11th Cir. 2014), <u>reh'g en banc,</u> 785 F.3d 498 (11th Cir. 2015).  Even if <u>Davis</u> remained good law, it would not support an abuse of process claim because it discussed prosecutorial misconduct with no mention of abuse of process.[2]  754 F.3d at 1218–19.  Hastings also cites

---

[1] Hastings may have intended to bring a prosecutorial misconduct claim.  <u>See, e.g.,</u> <u>United States v. McNair</u>, 605 F.3d 1152, 1208 (11th Cir. 2010) ("To establish prosecutorial misconduct for the use of false testimony, a defendant must show the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material.").  He did not, however, so we do not address whether a prosecutorial misconduct claim would be viable.

[2] Hastings mentions more prosecutorial misconduct cases in his reply brief that also do not mention abuse of process.  <u>E.g.</u>, <u>Berger v. United States</u>, 295 U.S. 78, 55 S. Ct. 629 (1935); <u>Davis v. Zant</u>, 36 F.3d 1538 (11th Cir. 1994); <u>United States v. Wallach</u>, 935 F.2d 445 (2d Cir. 1991).

several noncriminal cases from other jurisdictions.[3]  Because Hastings does not

support his abuse of process claim with relevant cases or law, he cannot show that

the district court plainly erred.  See Dortch, 696 F.3d at 1112.

**AFFIRMED.**

---

[3] E.g., Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585 (9th Cir. 1983) (sanctions in an antitrust case); Att'y Grievance Comm'n of Md. v. Kahn, 431 A.2d 1336 (Md. 1981) (disbarment proceedings).